PROVOSTY, J.
(dissenting). On representation made to the commission council of the city of New Orleans by the company owning and operating the street railways of the city that, due to the increase in the cost of labor and materials, the system could no longer be operated on the 5-eent,fare fixed in the franchises under which the said railways were allowed the use of the streets, said commission increased the fare to 6 cents.
Satisfactory operation not being possible even at this increased rate, recourse was had to a receivership in the United States District Court for the Eastern District of Louisiana.
The court authorized the receiver to charge a fare of 8 >cents, for the reason, that any *799 lower rate ■ would be confiscatory of the property of the company. This action of the court was contested unsuccessfully by the city. O’Keefe, Receiver, et al. v. City of New Orleans et al. (D. C.) 273 Fed. R. 560.
Conferences then began to be held between the company, the parties interested in it, and the commission council of the city, looking to a permanent adjustment and settlement of the railways situation.
Such a conference was to be held on the night of June 30, 1921, when in the afternoon of that day the Attorney General filed suit in the civil district court of the parish of Orleans, in the name of the state, asking for an injunction—
“enjoining and prohibiting said defendants from adopting any ordinance or resolution or entering directly or indirectly into any contract or agreement 'whatsoever reforming or changing any one of the existing franchise contracts under which any one of the public streets or highways of the city of New Orleans is now occupied and used for street railway purposes, from adopting any ordinance or resolution or directly or indirectly consenting or agreeing to by ordinance, resolution, or otherwise, any increasing, directly o.r .indirectly,, of the fare of 5. cents for street railway service stipulated in existing franchise contracts, from adopting any ordinance or resolution or making' any contract or agroeinent whatsoever, directly or indirectly, by ordinance, resolution, or otherwise whereby any company, person or association of persons is given the privilege and right to earn any stipulated return on any stipulated valuation or other basis, and from adopting any ordinance or resolution or making any contract or agreement, or consenting thereto, directly or indirectly, by any ordinance, resolulion, or otherwise, granting any franchise to any company, person or association of persons to occupy and use the streets and public highways of the city of New Orleans or any one of them for street railway purposes without selling said proposed franchise at public auction io the highest bidder or bidders after due Advertisement, as required by law.”
' The grounds of the injunction were that the railway company had by its mismanage■ment wrecked the railway property, was in■solvéntj.' and had gone .into; the, hands of a receiver, and by all the foregoing had forfeited its franchises to the state; that the commission council was- about to grant to said company without consideration, and without adjudication to highest bidder as required by law, the right to occupy and use the streets on terms different from those fixed in said franchises, which were contracts, and that the council was without authority to do this ; that the scheme by which this was thus sought to bo done was a “trick and fraud” against the state, and would “enslave the inhabitants of the city for the benefit of the New Orleans Railway & Light Company”; and that the allowing of an increase in the fare to be charged by said company is prohibited by articles 47 and 48 of the Constitution of 1913, and sections 3 and 4 of article 4 of the Constitution of 1921, and that same would operate as an assumption of the liabilities of said company by the city in violation of article 58 of the Constitution of 1913, and section 12 of article 4 of the Constitution of 1921, and would be a violation of Act 112 of 1896; and that the carrying out of said scheme would impair the right of the state to forfeit the charter and franchises of said company; that three of the five members of the council have publicly committed themselves to said scheme; that unless enjoined the council will adopt an ordinance which by its mere adoption will become effective as a contract which will pass under the administration of the receiver in charge of said company and under the jurisdiction and protection of the United States District Court, to the irreparable injury of the state and of the inhabitants of the city.
One of the judges of the civil district court granted an order to the commission council to show cause why an injunction should not be granted as thus prayed, and that; pending a hearing on this order, the defendants be restrained and prohibited as prayed for.
*801 Thereupon, on that same day, the mayor and the other members of the commission council presented to this court a petition alleging:
That they “have had under consideration and discussion the street railway problem now confronting the people of the pity of New Orleans; that conferences have been arranged with representatives of all business and civil exchanges, with the citizens’ committee of forty appointed by Hon. Rufus E. Foster, judge of the United States District Court for the Eastern District of Louisiana, and with numerous other organizations and bodies; that conditions at the present time are very grave and demand immediate action; that it is urgently necessary and indispensable that petitioners be permitted to act in accordance with the powers conferred upon them by law for the purpose, if possible, of bringing these matters to a settlement, and that unlawful interference from any source should be prohibited”
—and alleging further:
That the civil district court was without jurisdiction to enjoin the city council from exercising its legislative functions, and that they, the relators “have no adequate remedy by apX>eal in this case; that said restraining order will cause them irreparable injury, and that a writ of prohibition is necessary to protect them in the premises; that relators have apixlied for a suspensive appeal from said order, and that same has been denied by the court.
“Petitioners further- allege that they have given notice of their intention to axxply for a writ of prohibition to the trial court and to opposing counsel.”
The relators prayed for a writ of xxrohibiti.on prohibiting the civil district court from executing or carrying into effect the said order of ad interim injunction, and from proceeding further in said cause until the further orders of this court. This court directed a rule nisi to issue to the judge who had granted'the said injunction to show cause why a prohibition should not issue as thus i>rayed, and why the same should not be made, perpetual, and ordered that in the meantime the proceedings in the cause be ' stayed.
On July 5, 1921, the Attorney General applied to this court to set aside this order, for .the reason that it was improviden.tly granted, in that the granting of it was the exercise of original jurisdiction by this court, and that it was granted without any plea to the jurisdiction of the lower .court having been presented to that court, and overruled: and that the aixplication for it had not been proceded by notice to the Attorney General as is "required by section 1 of rule 15 of this court; and for the further reason that the civil district court had jurisdiction to issue the injunction.
In his answer to the rule nisi the trial judge makes .the same objection of no plea to his jurisdiction having been presented, and goes on to plead that he has authority to issue the injunction in question.
These two xffeas are inconsistent, since the reason why a plea to the jurisdiction is required to be presented in the lower court before application is made to the upper court for prohibition is (apart from the mere matter of courtesy duo to the lower judge) that the attention of the lower judge should be called to the fact of his not having jurisdiction, so that he may have an opportunity to discover and recognize his error, if there be one, and remedy it, without the upper court being unnecessarily troubled ■ in the matter. Manifestly, if the upper court is informed by the lower judge that he considers that he has the authority, and that if the question is presented to him he will so hold, of what earthly use is it for the upper court to refuse the prohibition until the case shall have gone back to the. lower court and the empty formality of the filing and overruling of the plea gone through with?
The legal situation would, as a matter pi course, be different if this requirement of a plea to the jurisdiction or authority of the lower judge in the premises having to be submitted below and ruled- on as a prerequisite to the application for a writ of prohibition were codal, but it is not; it is a mere *803 matter of' discretion with the upper court; the authorities leave no room for doubt on that score'.
The rule and the exceptions to it are stated iii 22 R. O. L. 27, as follows:
“(27) As a general rule, a writ of prohibition will not be issued to an inferior court unless the attention of the court whose proceedings it.is sought to arrest has been called to the alleged lack or excess of jurisdiction, the foundation of the rule being the respect and consideration due to the lower court and the expediency of preventing unnecessary litigation. This requirement is made by rule of court in 'some jurisdictions. The objection in the lower court cannot be said .to be jurisdictional, and the higher court may and will proceed without such objection in proper eases. The rule is one of discretion only, and is not in any sense rigid or arbitrary. Thus ^ no objection .in the court sought to bo prohibited need be made where the proceeding is ex parte, and there was no opportunity to object; where the • applicant was prevented by artifice or. fraud from making objection; where the lack of jurisdiction is apparent on the face of the proceeding; where the intention of" the inferior court to act beyond its jurisdiction is made apparent in any way and it is obvious from the whole proceedings that such an application would be futile; or where the necessary delay - would be highly injurious to the interests of the applicant. The matter of judicial courtesy should yield to substantial personal rights of litigants, such as a sacrifice of their liberty.”
23 A. & E. Enc. of L. p. 213, says:
“But' this, rule is not jurisdictional. It is simply a rule of practice, noncompliance with which constitutes laches which may or may not be excused, according to circumstances."
32 Cyc- 624, says:
“This rule has, however, been held to be inapplicable to ex parte proceedings, or to proceedings in 'which the applicant for the writ had no opportunity to object; and in some jurisdictions .an exception to the rule is recognized where a want of jurisdiction is apparent on the face of the record.”
.Erom. Annual Annotation to- Cyc. 1914-1917, ,p, 2396,.note 624-58, I transcribe the following:.'. . .
“Rule inapplicable where judge in original proceedings had already prejudged the case and application would have been unavailing. State v. Kelley, 32 S. D. 526, 143 N. W. 953.”
And cited at the same place to the same effect is the decision of the Supreme Court of California in Keeley v. Superior Court, 26 Cal. App. 213, 146 Pac. 526.
And from Permanent Yol. Cyc. Annotation 1921, I take the following:
“Rule inapplicable in summary proceedings of quasi criminal nature such as proceedings for contempt. Reynolds v. Reynolds, 24 Hawaii, 510.”
“Where objection would be futile and would only cause delay it need not be made. Impr. Dist. v. Dudley (Ark.) 222 S. W. 59.”
“Request by county attorney that justice of peace dismiss criminal case pending before him is sufficient. Foley v. Ham (Kan.) 169 P. 183 [L. R. A. 1918C, 986].”
In support of the third of said propositions of Cyc. 24 decisions are cited from the courts of England, Canada, Alabama, California, Colorado, Florida, Kentucky, Missouri, South Carolina, West Virginia, New Mexico.
One of the decisions cited in support of all three of said propositions is that of Havemeyer v. Superior Court, 84 Cal. 327, 24 Pac. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192, where the court went elaborately into the question. I quote from that decision as follows:
“We come finally to the proposition upon which counsel for respondent insists most strenuously, viz., that the jurisdiction of the court to grant a peremptory writ of prohibition depends absolutely upon the allegation and proof by petitioners that before filing their petition here they had pleaded to the jurisdiction of the superior court, and that their plea had been overruled.
“To 'sustain this proposition they cite the decisions of this court, above referred to. Chester v. Colby, 53 Cal. 517, and S. P. R. R. v. Superior Court, 59 Cal. 476, and they cite a number of decisions from the courts of other states.
■‘■‘It is clear that the California cases do not support the contention of respondent. In each of them a party to the proceeding in the *805 lower court was the petitioner for the writ; anti all that was held in the first case was that, an objection to the jurisdiction of the lower court having been taken by demurrer, and being undecided -there, this court would not interfere by prohibition before that court had overruled the objection. In the second case, it was held that the party must in some form object to the want of jurisdiction of the lower court before the writ of prohibition would issue. In neither case was the failure to make such objection held to be jurisdictional, but the refusal to issue the writ was put upon the ground that prohibition is a prerogative writ, and consequently that the court had and ought to exercise the right to make its issuance subject to reasonable conditions, and that it was reasonable to give the lower court an opportunity to correct itself before calling the judge to answer here.
“We have no doubt that both decisións are correct in all that they decided, and in all that was said in the opinions on this point. To the 'extent that its issuance may be made subject to reasonable conditions applicable equally to all cases and all suitors, the writ of prohibition is, no doubt, a ‘prerogative’ writ, though it may be doubted if that is a correct term of description; for, in the same sense,' all writs might be called prerogative writs. And we are satisfied that the rule of practice established by these decisions is a proper and wholesome rule, recommended by important considerations of expediency.
“When a party has an opportunity of objecting in the lower court that it is proceeding or is asked to proceed in a matter without or in a manner exceeding its jurisdiction, he ought to make the objection there. It is only fair to the court that the objection should be brought to its attention in some proper form. If no objection is made — the party having every opportunity to object — the court may reasonably infer that no ground of objection exists, and not only is the court entitled to the advice and suggestions of the party with reference to objections apparent on the record — there are many cases in which the ground of objection would .not appear unless set forth by plea in some form. And it is to be presumed that any valid objection properly brought to the attention of the court would generally prevail, and that all necessity for a writ of prohibition would be obviated. Therefore, the interest of the public in preventing unnecessary litigation, as well as consideration for the judge of the lower court, demand that the objection should be made at the first opportunity.
“These are the reasons of the rule, and they indicate its scope and the extent of its application, as the authorities very fully show. We have not time to review the cases, other-than those cited from the reports of this state, but we refer to the case of Mayor of London v. Cox, L. R. 2 H. L. 278, 280, in which the learning of the subject is exhausted. That was a case appealed from the Court of Exchequer to the Exchequer Chamber, and finally to the House of Lords. Before deciding it, the lords requested the opinion of the justices-of the Queen’s Bench on two questions, the second being as follows: ‘Whether the garnishees in the Lord Mayor’s Court could maintain an action for a prohibition without having pleaded in the Lord Mayor’s Court.’ To which the justices unanimously responded that they could. This was in accordance with the unanimous decision both of the Court of Exchequer and Exchequer Chamber, which was-accordingly affirmed in the House of Lords.. The answer of the justices, prepared by Justice Willes, contains a full review of all the cases, showing that even in England the subject. had not been clearly understood, and. that some inconsistent and erroneous decisions had been made. It is not surprising, therefore, that in some of the United States-the same confusion has arisen, and that some cases have been erroneously decided, to. the effect, for instance, that the issuance of the-writ is in the discretion of the court, and that a formal plea to the jurisdiction of the lower-court is an essential prerequisite to its issuance. Fortunately no such decisions have-been made in this court, though in deciding Chester v. Colby, 53 Cal. 517, an Arkansas case is cited with approval which apparently does go to the extent claimed by respondent. But we are fully at liberty, without questioning the authority of any case decided in this court, to adopt the correct rule and doctrine as expounded and laid down in the case of Mayor of London v. Cox, L. R. 2 H. L. 278, 280.
“Without going into the niceties of the subject, it may be said that the following-propositions, applicable to this case, are fully supported by the decision in that case:
“(1) If a want of jurisdiction is apparent on the face of the proceeding in the lower-court, no plea or preliminary objection is necessary before suing out-the writ of prohibition.
“(2) If the proceeding in the lower court is-not on its face without the jurisdiction of such court, but is so in fact by reason'of the existence of some matter not disclosed, such matter- *807 ought to be averred in some proper form in order to make the want of jurisdiction appear.”
In a note occupying pages 929 to 97S of volume 111 Am. St. Rep. (small type), Mr. Freeman expounds exhaustively and very authoritatively the law of the “Writ of Prohibition.” It is not possible to reproduce here in its entirety oven that part of said note having special bearing upon the present question. The generalization of the-learned annotator may, however, be reproduced:
“The requirement that objection be made in the court whose proceeding is sought to be prohibited is not absolute. The purpose of the requirement is to insure that that court shall be treated with due respect by warning it of its possible error and thus rescuing it from the humiliation of being compelled to desist by the action of the supervising court when the action of the former was a mere inadvertence which it would willingly have avoided if its attention had Been called to the matter, and the time required for the proceeding in the higher court might have been also thereby saved to it; but the objection in the lower court capnot be said to be jurisdictional, and the higher court may and will proceed without such objection in proper cases. In truth, under the English practice no objection need be made in the subordinate tribunal in any case where its want of jurisdiction is apparent from an inspection of the record.”
The present case falls within all three of the exceptions mentioned above by Cyc.; the restraining order was granted ex parte; the commission council had no opportunity to object ; and, as will be shown hereinafter, the lower judge had no authority on the-face of the record. So that, apart from the mere question of courtesy to the lower court, there is no reason for sending this case back to the'lower court in order that the lower judge, may be afforded an opportunity to rule as to his having or not authority in the premises.
On the question of courtesy, no discourtesy, it is evident, has been intended; and, moreover, there has been none. The situation was pressing; the important conference in question- was booked for the- night of the evening on which the restraining order was issued. By the application for a suspensive appeal on the ground of the absence of authority to issue this restraining order, the judge was fully advised in the premises, and afforded a full opportunity to recall his restraining order. For preventing the said restraining order from breaking up the important conference to be held that night, there was not time to do more.
If as a matter of fact the lower judge was without authority to grant this restraining order, the commission council was entirely within its rights in applying to the higher court to paralyze the order, after having exhausted its remedies by .the application to the lower judge to grant a suspensive appeal from it.
As to the lower judge not having authority to issue an order to prevent the commission council of the city of New Orleans from exercising its legislative functions, there can be, upon the authorities, no doubt whatever. And the adoption of an ordinance, no matter what may be the nature of the ordinance, is nothing more or less than the exercise of the legislative function.
For “all. matters of local and municipal government” the legislative power has been delegated to the commission council by the Legislature in the fullest extent to which it was possible for the Legislature constitutionally to delegate it. The City Charter reads, in that connection, as follows:
“The legislative, executive and judicial powers of the city shall extend to all matters of local and municipal government, it being the intent thereof that the specifications of particular powers by any other provision of this charter shall never be construed as impairing the effect of the general grant of powers of local government hereby bestowed.
“(e) The city shall also have all powers, privileges and functions which, by or pursuant to the Constitution of this state, have been Or could be granted to or exercised by any city.”
*809 In “all matters of local and municipal government,” therefore, the legislative power of the commission council is plenary. With special reference to street railway franchises, and the increasing of the rate of fare which the present street railway companies may be authorized to exact, this court had occasion in the suit of Black et al. v. N. O. Railway Co., 145 La. 187, 197, 82 South. 81, 87, to ex-Xiress itself as follows:
“Section 28 empowers the commission council to grant privileges for the use of streets ‘for such periods of time as the council may determine. The commission council shall have power and authority to revoke all existing privileges, such as are referred to in this section. which may be rcvokable.’ The power to revoke certainly carries with it the right to modify a privilege granted by the city, particularly with the consent of the other party.”
That suit was founded on the same grounds, and had precisely the same object, .as the present one; the only difference between it and the present one being that it was brought by citizens and taxpayers, i whereas the present one is brought by the Attorney General — a difference w’hich certainly can exercise no influence upon the question of the authority vel. non of the judiciary to control by injunction the discretion of a legislative body.
This scope of the legislative power of the commission council being ‘thus as wide and all-embracing as the Legislature could make it, let us see what is the law with reference to the authority of the judiciary to interfere by injunction with the discretion confided by law to the legislative branch of a municipal government.
In Harrison v. City of N. O., 33 La. Ann. 222, 39 Am. Rep. 272, this court said:
“An injunction does not lie to restrain a municipal corporation from passing an ordinance. * * *
“The petition of plaintiff applying for the injunction discloses no cause of action. * * *
“Municipal corporations are clothed with legislative power, to be exercised according to their discretion, with reference to all subjects pertaining to their administrative functions. To allow them to be impeded or restrained in the exercise of these powers, at the will or caprice of any one who may believe that such or such act or ordinance might prove injurious to him, would interfere seriously with and completely disarrange the administration of the government of a city or other municipal corporation. * * *
“In this case non constat that the city will ever pass the apprehended ordinance. If it is passed, non constat that the railroad company or companies, will ever accept its terms, or exorcise the privilege or franchise granted.”
In State ex rel. Behan v. Judges, 35 La. Ann. 1075, it is said in the syllabus:
“The general rule is that courts are without power or jurisdiction to impede by preliminary injunction the usual functions of a municipal corporation.
“Courts are powerless to interfere by injunction with a municipal council in the exercise of that power.' An injunction thus issued is a nullity, and will be vacated by prohibition.”
In the body of the opinion- the court says, at page 1081:
“Wo therefore hold, both on .reason and on abundant authority, that no court of justice had the legal power to interfere by preliminary injunction with the municipal council in the exercise of that franchise, one of its plainest and most essential administrative functions. The legality or constitutionality of its proceedings in such cases is amenable to judicial action under proper showing, like all ordinances of the municipal corporation, after the exercise of municipal discretion but not before.”
At page 1084 it is said:
“We reach a similar conclusion concerning the injunction issued by the respondent judge in our case; and we hold that the preliminary injunction, which paralyzed the administrative functions of the city council of New Orleans, is an absolute nullity. High on Injunctions, § 786; Pullman v. [Mayor], 54 Barb. (N. Y.)” 169.
. The same ruling was made in the case of Railway Company v. Mayor and Council of New Orleans, 39 La. Ann. 127, 1 South. 434, where the court held:
*811 “An injunction in limine does not lie to prevent the mayor of a municipal corporation from signing an ordinance passed by the council, purporting to repeal a previous ordinan.ee and contract under it.
“Non constat, that the mayor will sign the ordinance, or that the council will pass it over bis veto if returned unsigned, or that it will become executory.
“It is not until after such ordinance has been signed, or become executory, that its validity can be judicially contested and determined.
“Otherwise, the court would be exposed to adjudicate on the legality of an ordinance merely in embryo, which may never be signed or acquire vitality.
“Courts of justice have enough to do in dealing with real, existing and actual wrongs, without anticipating and combating hypothetical evils of the future which may not arise.”
In analyzing the reasons for this ruling, the court said, at page 132 of its decision (1 South. 436):
“As much as any individual citizen, a municipal corporation has a right to think and to say that a contract, to which it is a party, is a nullity and to repudiate it, as far as practicable.
“Such statement, of course, does not of itself do away with the ordinance, or contract made in furtherance of it, as it is a mere declaration, or expression of opinion, not required by law to be uttered, as a condition precedent to obtain eventual relief, and the contract may well stand, notwithstanding it, provided the enunciation be not founded on grounds sufficient to substantiate and justify it.
“It is not until after the ordinance shall have been signed by the mayor, or been passed over his veto, or have become final by the lapse of time, that its validity can be judicially contested and determined.
“Otherwise the court would be exposed to adjudicate upon the legality of an ordinance merely in embryo, which may never be signed, or never bécome definitive.
“As was said, in 29 La. Ann. 272, and repeated with approbation in 32 La. Ann. 1196, 1197:
“ ‘Courts of justice have enough to do in dealing with real, existing, and present wrongs, without anticipating and combating hypothetical evils of "the future, which may or may not arise.’
“The dissolution of the preliminary injunction and the dismissal of the suit, on the exception, were proper.”
In N. O. Waterworks Co. v. New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518, the court said:
“If it is said,” etc., “our answer is that a court of equity cannot properly interfere with, or in advance restrain, the discretion of a municipal body while it is in the exercise of powers that are legislative in their character. * * * The courts will pass the lino that separates judicial from legislative authority if by any order or in any mode they assume to control the discretion with which municipal assemblies are invested, when deliberating upon the adoption or rejection of ordinances proposed for their adoption. The passage of ordinances by such bodies are legislative acts which a court of equity will not enjoin. * * * If an ordinance be passed and is invalid, the jurisdiction of the courts may then be invoked for the protection of private rights that may be violated by its enforcement.”
In Alpers v. San Francisco (C. C.) 32 Fed. 506, Mr. Justice Field, of the Supreme Court of the United States, states the legal situation in lucid fashion as follows:
“Municipal corporations are instrumentalities, of the state for the more convenient administration of local affairs, and for that purpose are invested with certain legislative power. In the exercise of that power, upon the subjects submitted to its jurisdiction, they are as much beyond judicial interference as the Legislature of the state. The courts cannot in the one case forbid the passage of a law, nor in the other the passage of a resolution, order, or ordinance. If by either body, the Legislature or the board of supervisors, an unconstitutional act be passed, its enforcement may be arrested. The parties seeking to execute the invalid act can be reached by the courts, while the legislative body of the state, or of the municipality, in the exercise of its legislative discretion, is beyond their jurisdiction. The fact that in either case the legislative action, threatened may be in disregard of constitutional restraints, and impair the obligation of a contract, as alleged in this case, does not affect the question. It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary.”
Some courts have by obiter dictum said, that there might be exceptions to that rule, and -some courts have even gone so far as ta- *813 give effect to such an exception; of this I am fully aware; but very evidently by such exception the court substitutes its own discretion to that of the legislative body, or, in other words, divests the legislative body of a discretion intrusted to it by law. Very evidently, the principle upon which the rule is founded precludes the possibility of an exception. As well say the courts of the state may deprive the Legislature of the state of the discretion which’ under our system of constitutional government inheres in it, as say that they may divest some local legislature of the discretion which the Legislature has constitutionally invested it with, to be exercised by it, and not by the judge of some court.
This saic). rule is peculiarly applicable in the ease of a municipal council upon which, as in the case of the commission council of New Orleans, the Legislature has ex industria conferred “all powers, privileges, and functions which, by or pursuant to the Constitution of this state, have been, or could be, granted to or exercised by any city” (section 1 of Act 159 of 1912, the city charter), and especially in connection with legislation upon a matter which the highest court of the state has already declared to be within the discretion of the municipal legislature.
And, even if an exception could be recognized to said rule, a case like the -present would certainly not be one in which to depart from said rule and recognize an exception. New Orleans is a city of 400,000 inhabitants. It constitutes a very large part of the state of Louisiana in point of population, to an even greater extent in wealth or property, and, necessarily, its commission council is part of the legislative branch of the government of Louisiana in the same large proportion. No problem of greater, or even near equal, difficulty of solution, of of greater, or even equal, importance has ever demanded the attention of the city council of New Orleans and cried loudly for early if not immediate solution than this one of street transportation of passengers. The public mind and the newspapers have been full of it for months, and especially in connection with an increase in the rate of car fare and with the inevitable necessity for it; and that phase of the matter has undergone elaborate, heated, and acrimonious ventilation in the district court, in the Supreme Court, and in the District Court of the United States. In the state court the decision has been in favor of the right to increase, and in the United States court the decision .has been against the authority or power of the city to reduce below a,n 8-cent fare. In view of the changes that have come about, and notably of the competition which the automobile has brought to the street railway, an increase of the rate of fare from 5 cents is not a matter of choice en the part of municipalities, but of absolute necessity. It is not a theory or a legal proposition, but a condition of actual fact, that confronts the municipality.
As I see this case, it does not differ in principle from one where the Legislature of the state itself should be enjoined, instead of one of its agencies, from exercising the legislative power. Let us suppose a case not likely ever to occur, but which may serve for illustration. If a justice of the peace of Baton Rouge were to aim a popgun injunction at the Legislature to prevent that body from exercising its discretion upon any particular suhjeet, the flagrancy of such a proceeding would at once strike every legal mind; and yet such a case would differ only in degree, not in principle, from one wherein the legislature of a municipality is enjoined.
In principle, the situation "would be the same in both; for in both alike the enjoined party would be a legislative body, and the *815 enjoining party a judge. .In both cases alike it would be the judiciary throwing a monkey-wrench into the machinery of the legislative branch of the ■ government. A statute may he enjoined after enactment, just as well as an ordinance after adoption, if invalid; neither can be enjoined before enactment or adoption.
As seen further from the authorities hcre'inabove cited, the rule requiring a plea to have been made and passed on below is inapplicable to cases where on the face of the proceedings the lower court has no authority to act. This is the rule in England, Canada, Alabama, Colorado, Florida, Kentucky, Missouri, South Carolina, Virginia, Utah, West Virginia, New Mexico, (see note, 21 Ann. Cas. 16S), and, so far as I know, is the rule everywhere. And the present case is just such a case. By way of illustration, let us suppose that the civil district court were venturing to entertain criminal juris•diction, as, for instance, issuing a warrant of arrest for murder, larceny, or burglary, or the criminal district court were venturing to entertain civil jurisdiction, as, for instance, by issuing a provisional seizure for rent; and suppose that it appeared,- as in the present case, that the attention of the judge had been orally attracted to his want of jurisdiction in the premises, and that the application for a prohibition was, as in the present case, not attended by any discourtesy to him — would this court require that. a formal plea to the jurisdiction should have been filed and ruled upon in the lower court before the prohibition should issue? I imagine not. And yet between these supposed cases and the present the distinction is only in degree, and not in principle.
As seen ‘ from the authorities hereinabove cited, the rule of requiring a plea to have been made and passed on. below, is inapplicable to bases “where the intention of the inferior court is made apparent in any way, and it is obvious from the whole proceedings that such an application would be futile.”
Mi\ Freeman, in his said note, 111 Am. St. Rep. at top of page 90S, expresses this same view, and .1 find that the Supreme Courts of several states have so held. In City of Charleston v. Littlepage, 73 W. Va. 156, 80 S. E. 131, 51 L. R. A. (N. S.) 353, where the municipal council of the city had been enjoined from adopting an ordinance, the court issued the prohibition, and in the course of the opinion said:
“If is not the purpose of the rule, under which we sometimes require want of jurisdiction in the lower court to be brought to its attention as a condition precedent to the application for the writ of prohibition, to require the question of jurisdiction to be there litigated and decided for review here, but only to-give that court an opportunity to correct its act in excess of its jurisdiction, due to misapprehension or oversight or some other adventitious circumstance. The rule is a mere exercise of the discretion of this court and is not in any sense rigid or arbitrary. Its application is clearly unnecessary in any instance in which the intention of the inferior court to act beyond its jurisdiction is made ajiparent in any way.”
In State v. Williams, 221 Mo. 227, 120 S. W. 740, the Supreme Court of Missouri held thht where the return to the writ of prohibition affirms the right of the inferior-court to proceed with the matter in hand it is not necessary to show that objection. to-its jurisdiction was taken in the inferior court.
Cases to the same effect are cited herein-above from South Dakota, California and Arkansas.
And, indeed, if from the return of the judge, or otherwise, it appears that the inferior judge has firmly made up his mind in the matter, and will overrule the objection to his authority in the premises, of what earthly use would it be for the higher court to refuse the prohibition until the applicant for it had gone down to the inferior *817 ■court and gone through the empty formality ■of filing a plea and having it overruled?
As seen from the authorities hereinabove •cited, the rule requiring a i>lea to have been made below is inapplicable to ex parte proceedings where the complaining party has had no opportunity to be heard below so as to prevent the order complained of from having effect. In every one of the cases I have examined in our reports in which that rule has been enforced the complaining party had an opportunity to escape entirely from the effects or operation of the action of the lower court, or the circumstances were such that delay until a plea could be interposed and heard and passed upon could do no harm. I have not examined all the cases, but I dare say that in every one of them where the rule was enforced it will be found that there had been opportunity to have adequate relief below. Whereas, in the present case the prohibition had to issue unless the unauthorized and illegal restraining order in question was to be allowed to tie up the commission council on ■the night in question and for several days thereafter until Judge King could be induced to revoke this order.
In the majority opinion it is said that this exercise of its legislative functions by the commission council “was not so urgent that ■they could not spare the time to plead to the jurisdiction of the Civil District Court.” This view of the situation is so at variance with mine that I am at a loss how to set about discussing that phase of the matter.
To- me it seems clear that it was our brother who was at fault, and not the commission council; that the commission council had the perfect and absolute right to meet that night and consider the problem, and to take such action upon it that night as its legislative discretion might dictate; and that it was under no obligation or duty to forego that right, and that when Judge King refused to recognize that right but insisted upon maintaining his restraining order in full force by refusing the suspensive appeal, there was nothing for the council to do but apply to the Supreme Court for prohibition.
Judge King was interfering with the liberty of the council; temporarily depriving the council of its liberty. An interesting case to read in that connection is State ex rel. Liversey v. Judge, 34 La. Ann. 741, where a newspaper had been enjoined from publishing an article injurious to the plaintiff in injunction. The court said:
“Liberty of the press consists in this: That neither courts of justice, nor any other judges whatever, are authorized to take notice of writings intended for the press, but are confined to those which are actually printed.”
The case is precisely the same with ordinances which a municipal council may intend to adopt.
And it would have been not on that night only that the council would have had to abstain from exercising its legitimate functions, and remain blocked, in statu quo, but until an exception to Judge King’s authority in the premises had been filed and fixed for trial and heard and decided. How long this would have been would have depended a good deal upon Judge King’s discretion.
The commission council had an absolute right to be relieved of this restraint. It was not bound to wait one minute, let alone a week or more. It fulfilled to the full measure its obligation of deference and consideration to Judge King when it called his attention orally to his want of authority in the promises, and asked him for an order of suspensive appeal. This suspensive appeal would have brought the matter to the attention of the Supreme Court without derogation to Judge King.
So much for the applicability of the rule to this case in so far as the rule is founded upon the courtesy due to .the judge. I .sub *819 mit, in all candor, tliat, under the peculiar circumstances.' of the case, the oral protest to Judge King and the application for a suspensive appeal afforded our learned brother all the opportunity which was needed to induce him to recall this restraining order (which for all the purposes of the present discussion must be considered to have been granted improvidently) if he had been so minded, and that the application for the prohibition was not, under the circumstances, treating Judge King with disrespect.
With all due deference to my learned colleagues, the suggestion that the matter before the council “was not so urgent that they could not spare the time to plead to the jurisdiction of the civil district court” is just one of those propositions to which courts of justice sometimes commit themselves as the result of looking only at the technical side of questions and losing sight of the practical side: I can make no more striking commentary upon that proposition than by reproducing here the following excerpt from this morning’s Times-Picayune, with reference to our decision handed down yesterday afternoon.
“Negotiations for the settlement of the public utilities problems came to an abrupt end Satux-day afternoon shortly after the conference between the commission council and representatives of the New Orleans Railway & Light Company had been resumed when word was received that the Supreme Court had handed down a decision which continues in force the injunction of Judge King restraining the city from entering into any agreement with the railway company on cax fares.
“It was the opinion of the members of the council, the representatives of the railway company, and the security holders and their legal advisers that further negotiations would be useless as no agreement could be made pending the ■ disposition of the injunction proceedings, even of the points on which it seemed a deadlock could be worked out satisfactorily.
“G. M. Dahl, representative of the junior security holders, and C. C. Cliappelle, who has conducted the negotiations for all of the security holders, immediately made arrangements 'to return to New York pending such time as the conferences may be reopened.
“Postponement of the negotiations means a continuance indefinitely of 8-cent car fare, $1.50 gas’, and the waiting list op which there are more than 3,000 applicants for electric light and power service.
“Failure to get relief at this time will mean consumers of gas will have to pay the increased rates on gas.during the winter months when consumption is highest and that thousands of homes and places of business will have to go without lights and power.”
The majority opinion also says:
“This suit was not an attempt at unlawful interference with the right of the municipal council to bring the railway problem to a settlement, if possible, and, to that end to hold conference with the committees and organizations referred to.
“The restraining order complained of, or the injunction prayed for, could not have prevented or interfered with such conferences or proceedings, so long as they did not result in a contract beyond what the state alleged was the limit of the commissioners’ authority.”
For appreciating fully how mistaken these views were, one has but to read the above newspaper extract, showing that the -reinstatement of the restraining order in .question which the application for prohibition had teinporarily paralyzed has -had the effect of putting an end to all conference and all consideration of the matter; and, indeed, how can my learned colleagues not perceive that it is impractical and idle to confer with a municipal body about doing something which said body is prohibited by order of court from doing.
The majority- opinion also says:
“The city’s contention that the court has no jurisdiction seems to rest upon the idea the purpose and object of the-suit, and the function of the temporai-y restraining ox-der, was to interfere, generally, with the legislative power and function of the municipal council.
“On the contrary, an analysis of the prayer for injunction shows that the true and only object was to prevent the municipal council from contracting, with regard to the street railway franchises, beyond what the state alleges is the limit of municipal authority.”
*821 I am not-aware that any question has arisen in the case as to the lower court’s “interfering generally with the legislative power and function of the municipal council.” I do not suppose any court would venture to do that.
No; the contention of the city is purely and simply that the courts are without authority to enjoin the commission council from passing an ordinance increasing the rate of street car fare, however full and complete may be the authority of the courts to enjoin the carrying out of such an ordinance after it has been passed, if it be found to transcend the powers of the council.
I fail to understand how my learned colleagues of the majority opinion do not perceive that the authority to enjoin the adoption of one intended ordinance, no matter on what subject, because its adoption would, in the opinion of the court, transcend the powers of the council, necessarily carries with it authority to enjoin any and all ordinances which in the opinion of the same court may transcend the powers of the council; so that, in last analysis, the power of the council to legislate or adopt any ordinance becomes subordinate to the opinion of the courts in respect to whether the proposed ordinance is or is not within the competency of the council. The practical operation of such a doctrine would be that, no matter what ordinance the council might be intending to adopt, the court could enjoin the adoption of it, because in the opinion of the court its adoption would transcend the competency of the council; and thus every proposed ordinance would be subject to the supervision of the courts before being adopted. Of course, the courts would never lend themselves to Impeding the council in that manner on every ordinance; but the question is not as to what the courts would or would not do, but as to whether they have the authority to do it. In every case, be it noted. the injunction would be an' interference not “generally with the legislative power and function of the municipal council” (see majority opinion), but, as in the present case, with the power of the council to adopt some particular ordinance. So that, if the line of distinction was between injunctions which interfere with the exercise of the legislative discretion in general and those which interfere only with its exercise in particular instances, the situation would be that the courts might enjoin the adoption of any ordinance that a municipal council might be intending to pass; and in every ease the sole question would be as to whether in the particular ease the court in the exercise of its own discretion would grant an injunction or not.
The majority opinion says further:
“If the civil district court should conclude the contemplated proceedings of the municipal council, of which the state complains, are matters over which the municipal council, as a legislative body, has exclusive authority, the court will not interfere. But the judgment of the court in determining -whether the proceedings contemplated by the municipal council has exclusive authority would be an exercise of jurisdiction on the part of the court.
“We must bear in mind the state is the author of the municipality’s authority to make such contracts. If the civil district court eventually should decide the state is not entitled to the relief prayed for, it will be, not for want of jurisdiction over the subject-matter, but for want of a cause or right of action.”
If the meaning of what is here said is that the lower court has jurisdiction of the case, as a case, I have no quarrel'with it; but if the meaning is that the lower court has authority to issue an injunction prohibiting the city council from adopting an ordinánce on the subject in question, I dissent wholly, and refer to the authorities hereinabove cited.
A court may have jurisdiction of a- case,' as a case, and yet not have authority to do the thing which it is asked in the case to do.
“In our opinion,” said this court in State ex rel. Behan v. Judges, 35 La. Ann. 1084, *823 supra, “tile word ‘jurisdiction’ implies something more than technical jurisdiction ratione materias et personal. * * * The term is defined to * * * to mean ‘a speaking of justice or of right.’ * * * It therefore .implies the power or authority in law to grant the full relief prayed for; and it must, of necessity, imply the scope or power to reach and hold the persons or parties to he affected by the particular decree to be issued. But it is fully demonstrated that a city council in the exercise of its inherent or delegated power of amotion of one of its officers is beyond the reach of the injunction process of courts.”
From 7 R. O. L. 1029, I take the following:
“The tendency of modern decisions is to enlarge the definition of jurisdiction to make it include not only the power to hear and determine but also the power to render the-particular judgment in the particular case.”
In the case of Bigelow v. Forrest, 9 Wall. (76 U. S.) 339, 351, 19 L. Ed. 696, the court had jurisdiction of the case, but, it having rendered a decree which it had not authority to render in the ease, the Supreme Court of the United States held that to that extent the decree was null. To same effect, Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914.
In the present case, therefore, the lower court has jurisdiction of the case as a ease, but it has no authority to do the thing it is asked to do in the case, to wit: Issue an injunction prohibiting the commission council from adopting some ordinance that it may be contemplating the adoption of. If, therefore, the lower court had not issued the restraining order in question, but had contented itself with ruling the city to show cause why an injunction should -not issue, there would have been no ground for a prohibition. .The lower court, then, would simply hear the case, and dispose of it by recognizing its want of authority to issue the injunction. But, instead of this, the court issued the restraining order, thereby, for the time being, arrogating to itself the authority to do the thing asked of it; and it is this transgression of authority that has rendered a writ of prohibition necessary.
Once in the past an attempt was made as in this case to enjoin the city council of New Orleans from exercising its councilmanic functions. I refer to the case of State ex rel. Behan, 35 La. Ann. 1075, supra. In that case the city council was enjoined from continuing with an impeachment proceeding. In the absence of the judge who had granted the injunction another of the judges of the civil district court granted a suspensive appeal from the injunction order. The enjoining judge, on resuming charge of his court,' rescinded the order for suspensive appeal, and refused a suspensive appeal from the latter order. The council then applied to the Supreme Court for a prohibition,' on the ground, as in the present case, that the court was without power to enjoin the council from exercising its functions. There had been no exception to the power of the court to issue the injunction, but simply, as in the present case, a fruitless application for a suspensive appeal. The only distinction between that case and the present one is that in that case the suspensive appeal was asked from the order rescinding the order by which an appeal had been granted; whereas in the present case the suspensive appeal was asked from a restraining order itself. The distinction is one without a legal difference.
The contention of the Attorney General that he was not notified of the intention to apply for the prohibition, as is required by the rules of court, is, in my opinion, without merit. Every possible effort was made to notify him; but, the injunction having been served upon the council late in the evening, the only thing that could be done was to put the notice under the door of his house (he having already retired for the-night) after vain efforts had been made to-arouse him.
*825 It is very true, as suggested by the learned Attorney General, that the issuance of the writ of prohibition- in this case would be the exercise of original jurisdiction; but the same is true in every case of application to this court for such a writ, since the proceeding for such a writ originates in this court and remains in this court to its termination.
I therefore respectfully dissent.